**No. 26-2994**

# United States Court of Appeals for the Ninth Circuit

STEPHEN PONS, CAROLINE COLEMAN, CHARLES BELLAVIA, and TERRI KLETZMAN on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants*,

WALTER KIDDE PORTABLE EQUIPMENT, LLC d/b/a Kidde Safety Equipment and BRK, LLC, d/b/a First Alert,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OPENING BRIEF OF PLAINTIFFS-APPELLANTS

SEAN ESKOVITZ
Eskovitz Law LLP
1217 Wilshire Blvd.
Suite 3683
Santa Monica, CA 90403
Tel: (323) 821-5836
seane@eskovitz.com

MARTIN WOODWARD
Kitner Woodward PLLC
13101 Preston Road
Suite 110
Dallas, TX 75420
Tel: (214) 443-4304
martin@kitnerwoodward.com

MICHAEL K. ROSS
ALISON VAN HORN
Aegis Law Group LLP
801 Pennsylvania Ave, NW, Ste. 740
Washington, D.C. 20004
Tel: (202) 737-3373
mross@aegislawgroup.com
avanhorn@aegislawgroup.com

*Counsel for Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................- iii -

JURISDICTIONAL STATEMENT..................................................- 1 -

ISSUES PRESENTED FOR REVIEW.............................................- 1 -

STATEMENT OF THE CASE......................................................- 2 -

A. Background of the Consumer Products at Issue...............................- 2 -

B. Appellants' Consumer Protection Claims.......................................- 5 -

C. Proceedings Before the District Court...........................................- 6 -

1. Order on Appellees' Motions to Dismiss......................................- 6 -

2. The Parties Engage in Extensive Fact and Expert Discovery.............- 6 -

3. The District Court Grants Summary Judgment to Appellees Without Addressing the Phase 1 Question.......................................- 8 -

D. California Health and Safety Code § 13114 and the Underlying Regulatory Framework........................................................- 13 -

1. HSC § 13114.............................................................- 13 -

2. The Underlying Regulatory Framework......................................- 14 -

SUMMARY OF ARGUMENT......................................................- 16 -

STANDARD OF REVIEW.........................................................- 18 -

ARGUMENT...........................................................................- 19 -

I. THE DISTRICT COURT ERRED IN CONCLUDING THAT THE CALIFORNIA SAFE HARBOR DOCTRINE BARS APPELLANTS' CLAIMS...............................................................................- 19 -

A. The Safe Harbor Doctrine Carves Out a Narrow Exception for Specific Conduct from the Judiciary's Broad Power to Declare Conduct Unfair or Deceptive....................- 21 -

1. HSC § 13114 Does Not Grant the Fire Marshal Regulatory Authority Over the Accuracy or Veracity of the Advertising or Marketing of Ionization Devices....................- 23 -

2. No Legislation or Regulation Actually Bars a Claim or Clearly Permits The Specific Conduct Challenged Here....................- 25 -

3. The Fire Marshal's Listings Do Not Carry the Force of Law or Approve How the Devices Are Advertised, Labeled, or Packaged.....- 32 -

a. Informal Agency Action Cannot Create a Preemptive Safe Harbor....................- 33 -

b. The Listings Do Not Clearly Permit the Challenged Conduct.......- 38 -

II. THE DISTRICT COURT ERRED IN DISMISSING COUNTS I AND II BECAUSE APPELLANTS HAVE ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF....................- 40 -

A. Article III Requires Only a Similar Injury, Not an Identical One...........- 41 -

B. Appellants Adequately Alleged a Similar Injury....................- 42 -

CONCLUSION....................- 43 -

STATEMENT OF RELATED CASES....................- 45 -

CERTIFICATE OF COMPLIANCE....................- 46 -

CERTIFICATE OF SERVICE....................- 47 -

# TABLE OF AUTHORITIES

## Cases

*Alvarez v. Chevron Corp.,* 656 F.3d 925 (9th Cir. 2011) .................................... - 31 -

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001)............................................. - 41 -

*Bourgi v. West Covina Motors, Inc.,* 83 Cal. Rptr. 3d 758
(Cal. Ct. App. 2008)………………………………………………… - 21 -, - 31 -

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527
(Cal. 1999) ............................................................................................passim

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)............................................. - 41 -

*Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956 (9th Cir. 2018) ...................passim

*Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152
(9th Cir. 2012)……………….......................... - 22 -, - 23 -, - 28 -, -37-, - 38 -

*De La Torre v. CashCall, Inc.,* 422 P.3d 1004 (Cal. 2018)...................... - 23 -, - 27 -

*Dinan v. SanDisk LLC*, 844 F. App'x 978 (9th Cir. 2021) ................................. - 31 -

*Doe v. SuccessfulMatch.com,* 70 F. Supp. 3d 1066 (N.D. Cal. 2014) ................ - 24 -

*Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008)......................................... - 18 -

*Ebner v. Fresh, Inc.,* 838 F.3d 958 (9th Cir. 2012)........................- 21 -, - 26 -, - 28 -

*Hackert v. First Alert*, *Inc*., 271 Fed. Appx. 31 (2d Cir. Mar. 25, 2008) .............. - 4 -

*Hittle v. City of Stockton, California*, 101 F.4th 1000 (9th Cir. 2024) ............... - 18 -

*Hofmann v. Fifth Generation, Inc.,* No. 14-cv-2569, 2015 WL 7430801
(S.D. Cal. Nov. 20, 2015) ......................................................................... - 34 -, - 37 -

*Holland v. Walter Kidde Portable Equip. Inc., et al.,* No. 2:05-CV-325-TMP
(N.D. Ala. Nov. 28, 2007)........................................................................................ - 4 -

*Johnson v. California*, 543 U.S. 499 (2005) ...................................................... - 41 -

*Kay v. Copper Cane, LLC*, 549 F. Supp. 3d 1014 (N.D. Cal. 2021) .................. - 36 -

*Kohler v. Bed Bath & Beyond of California, LLC*, 778 F.3d 827 (9th Cir. 2015)........ - 18 -

*McKay v. Sazerac Co., Inc.,* No. 23-cv-00522, 2023 WL 3549515 (N.D. Cal. May 17, 2023) ........ - 29 -, - 30 -, - 37 -

*Meland v. Weber*, 2 F.4th 838 (9th Cir. 2021) ........ - 19 -

*Mercer v. Pittway Corp.*, No. 89732, 1998 WL 35222492 (Iowa Dist. May 27, 1998)........ - 4 -

*People v. Johnson & Johnson*, 77 Cal. App. 5th 295 (Cal. Ct. App. 2022)........ - 39 -

*Reid v. Johnson & Johnson,* 780 F.3d 952 (9th Cir. 2015)........ - 34 -

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)........ - 43 -

*Torres v. JC Penney Corp., Inc.,* No. 12–cv–01105 JST, 2013 WL 1915681 (N.D. Cal. May 8, 2013) ........ - 25 -, - 40 -

*United States v. Mead Corp.,* 533 U.S. 218 (2001) ........ - 34 -, - 35 -, - 36 -

*Von Koenig v. Snapple Beverage Corp.,* 713 F. Supp. 2d 1066 (E.D. Cal. 2010)........ - 34 -, - 37 -

*Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643 (9th Cir. 2000) ........ - 19 -

*Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251 (9th Cir. 2010) ........ - 42 -

**Statutes**

28 U.S.C. § 1291 ........ - 1 -

28 U.S.C. § 1332 ........ - 1 -

California Health and Safety Code § 13114........passim

California Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq*.......... - 5 -

California Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq*.. - 5 -, - 16 -

California False Advertising Law, Bus. & Prof. Code §§ 17500 *et seq*. ........ - 5 -

**Rules**

Fed. R. Civ. P. 56 .......... - 19 -

**Regulations**

19 C.C.R. § 206 .......... - 15 -, - 16 -

19 C.C.R. § 209 .......... - 15 -, - 16 -, - 26 -

19 C.C.R. § 212 .......... - 16 -

19 C.C.R. § 213 .......... - 15 -, - 26 -

19 C.C.R. § 214 .......... - 15 -, - 26 -

19 C.C.R. § 741 .......... - 14 -

19 C.C.R. § 743 .......... - 14 -

19 C.C.R. § 744 .......... - 14 -

19 C.C.R. § 756 .......... - 14 -

Australia NT Fire and Emerg. Regs. 1996, Part 13A .......... - 5 -

Australia Queensland Bldg. Fire Safety Reg. 2008, Part 5A, regs 55C-55E .......... - 5 -

City of Albany (CA) Mun. Code, §§ 11-8 and 11-10 .......... - 4 -

Mass. Comp. Fire Safety Code, 527 CMR 1.05, Ch. 13, §§ 13.7.5.1.1, 13.7.5.1.2 .......... - 4 -

NZ Res. Tenancies (Smoke Alarms and Insulation) Regs. 2016 (LI 2016/128 Part 1.7) .......... - 5 -

Ohio Admin. Code, Ch. 4101:8-3-01, § 314.1.2 .......... - 4 -

Palo Alto (CA) Mun. Code 16.06.160 .......... - 4 -

Vt. Stats., 9 V.S.A. §§ 2882, 2883 .......... - 4 -

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), or, alternatively, under 28 U.S.C. § 1332(a), because there are more than 100 class members and the aggregate amount in controversy exceeds the sum or value of Five Million Dollars ($5,000,000.00) exclusive of interest, attorneys' fees, and costs, and at least one class member is a citizen of a state different from the state of citizenship of at least one Defendant-Appellee.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 from the Final Judgment entered by the District Court on April 14, 2026. 1-ER-2. Pursuant to FRAP 4, Appellants filed a timely Notice of Appeal on May 5, 2026. 3-ER-354.

## ISSUES PRESENTED FOR REVIEW

1. Did the District Court err in granting summary judgment on the ground that California's safe harbor doctrine immunizes Appellees from liability under California's Consumers Legal Remedies Act for false and misleading advertising, labeling, and packaging of household fire safety devices?

2. Did the District Court err in dismissing Appellants' claim for injunctive relief on the ground that they lacked standing under California's Unfair Competition Law and its False Advertising Law?

## STATEMENT OF THE CASE

### A. Background of the Consumer Products at Issue

When consumers purchase a product marketed and labeled as a "Smoke Alarm," they reasonably expect it to warn them in time to allow safe escape from common and deadly home fires, including smoldering fires. 2-ER-110. Yet for decades, Appellees have been marketing products labeled "Smoke Alarms" that use ionization technology ("ionization devices"), even though those products are technologically unsuited for this basic function. 2-ER-107, 112. Ionization devices do not sound in time to permit safe escape from smoldering fires, which are a leading cause of home fire deaths. 2-ER-111-112. This putative class action arises out of the deceptive and misleading advertising, labeling, and packaging of ionization devices manufactured by Appellees, the two largest manufacturers of household fire safety products in the United States. 2-ER-217 ¶¶ 1, 3.

Extensive evidence—including testing and research by the U.S. government and recognized fire science experts—demonstrates that ionization devices fail to protect residents from smoldering fires. 2-ER-112-121. As early as the 1970s, scientific researchers raised serious concerns about the inability of ionization devices to timely detect smoldering fires due to their inherent insensitivity to the particles generated by smoldering combustion. 2-ER-117.

Those concerns—known to Appellees—led, in the early 2000s, to full-scale testing by the U.S. Commerce Department's National Institute of Standards and Technology ("NIST"), the data from which confirmed that ionization devices fail to warn occupants of smoldering fires in time to allow safe escape. 2-ER-118. NIST's results, and further testing confirming them, ultimately forced changes to the artificial and industry-influenced Underwriters Laboratories ("UL") standard that Appellees used as cover for decades to market and sell scores of millions of dangerously ineffective ionization devices to an unsuspecting public. 2-ER-119. It is undisputed that Appellees' ionization devices at issue have not passed, and cannot pass, UL's current and more realistic smoldering fire test, yet Appellees continued selling their ionization devices as "Smoke Alarms" for another decade, including to Appellants. 2-ER-107. Notably, each Appellee no longer manufactures the ionization devices at issue in this case. *Id.*

For years, various courts and legislatures have recognized the dangers posed by Appellees' ionization devices. In cases involving grave personal injuries and deaths, federal and state courts have repeatedly found that ionization devices fail to

detect smoldering fires.[1] And multiple state, local, and foreign governments bar the use of ionization devices as standalone alarms.[2]

---

[1] *See*, *e.g.*, *Hackert v. First Alert*, *Inc*., 271 Fed. Appx. 31, 32 (2d Cir. Mar. 25, 2008) (affirming judgment against First Alert that its ionization detector was defectively designed; that the device was a legal cause of the deaths of William and Christine Hackert; and that punitive damages were warranted); *Holland v. Walter Kidde Portable Equip. Inc., et al.*, No. 2:05-CV-325-TMP, slip op. at 11 (N.D. Ala. Nov. 28, 2007), https://www.govinfo.gov/content/pkg/USCOURTS-alnd-2_05-cv-00325/pdf/USCOURTS-alnd-2_05-cv-00325-1.pdf ("[T]here is substantial evidence from which a reasonable jury could conclude that [Kidde] ionization smoke detectors are not fit for the intended purpose of providing a timely alarm in the presence of a commonly occurring [*i.e.,* smoldering] fire . . . . soon enough to enable residential occupants to escape being overcome by smoke and carbon monoxide."); *Mercer v. Pittway Corp.*, No. 89732, 1998 WL 35222492 (Iowa Dist. May 27, 1998); *aff'd in part, rev'd in part*, 616 N.W.2d 602, 620–21 (Iowa 2000) ("[T]here is a connection between the claimed defect—that smoldering fires that produce large particles are not readily detected by ionization smoke detectors—and the [Plaintiffs'] injuries. The defect in the [ionization detector model], that is large-sized particles, but few in number, which fail to neutralize ions in the [detector] so as to trigger an alarm, is the same defect that appeared in the [Plaintiffs'] fire.").

[2] *See* Mass. Comp. Fire Safety Code, 527 CMR 1.05, Ch. 13, §§ 13.7.5.1.1, 13.7.5.1.2 (requiring photoelectric technology for smoke alarms and detectors); Ohio Admin. Code, Ch. 4101:8-3-01, § 314.1.2 (requiring photoelectric technology outside each sleeping area and both photoelectric and ionization technologies on each level within dwelling unit); Vt. Stats., 9 V.S.A. §§ 2882, 2883 (requiring photoelectric—or, since July 2025, *i.e.,* after the effective date of UL 217 8th edition—UL 217-compliant detectors in new construction and upon sale or exchange of single-family dwellings); Palo Alto (CA) Mun. Code 16.06.160 (amending Section R314.1 of the Cal. Res. Code to require smoke detectors to be listed and approved "for rapid response to smoldering synthetic materials," and to be of the photoelectric type (or with equivalent detection capabilities) in dwellings and to be of the photoelectric-only type near kitchens or fireplaces); City of Albany (CA) Mun. Code, §§ 11-8 and 11-10 (requiring photoelectric-only type devices prior to sale of any property and in new construction, renovation, remodel, major repair, additions, alterations, and prohibiting dual-type smoke alarms and detectors). New Zealand and some Australian territories similarly mandate photoelectric devices. *See* NZ

**B. Appellants' Consumer Protection Claims**

The original complaint in this action, filed on July 10, 2023 (the "Original Complaint"),[3] asserted three claims for violation of California's consumer protection laws. 3-ER-347-351, ¶¶ 110-133. Specifically, Appellants alleged that Appellee's deceptive and misleading advertising, labeling, and packaging of their ionization-only devices as "Smoke Alarms" violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"; Count I), False Advertising Law, Bus. & Prof. Code §§ 17500 *et seq.* ("FAL"; Count II), and Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq.* ("CLRA"; Count III) by deceiving and misleading reasonable consumers to believe the products will sound in time to avoid injury or death from common and deadly home fires when they will not. *Id.*

The Original Complaint sought monetary damages with respect to the CLRA claim, and injunctive relief only with respect to the UCL and FAL claims. 3-ER-348 ¶ 115; 3-ER-349 ¶ 124; 3-ER-351 ¶ 133.

---

Res. Tenancies (Smoke Alarms and Insulation) Regs. 2016 (LI 2016/128 Part 1.7); Australia NT Fire and Emerg. Regs. 1996, Part 13A; Australia Queensland Bldg. Fire Safety Reg. 2008, Part 5A, regs 55C-55E.

[3] As the case proceeded, the Original Complaint was amended by a First Amended Complaint and, then again, by a Second Amended Complaint. Because the claims already had been dismissed by the Court, neither the First Amended Complaint nor the Second Amended Complaint included Count I (UCL) or Count II (FAL) from the Original Complaint. 2-ER-216.

### C. Proceedings Before the District Court

In this appeal, Appellants assign error to two Orders by the District Court: (1) its December 20, 2023 Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, 1-ER-10, and (2) its April 6, 2026 Order Granting Defendants' Motion for Summary Judgment, 1-ER-3.

#### 1. Order on Appellees' Motions to Dismiss

Each Appellee moved to dismiss the Original Complaint, to which Appellants filed a consolidated opposition. By Order dated December 20, 2023, the District Court granted in part and denied in part Appellees' motions. 1-ER-10. Regarding Counts I and II, the District Court concluded that Appellants lacked standing to seek injunctive relief under the UCL and FAL. 1-ER-13-15. As for Count III—Appellants' CLRA claim—the District Court held that the Original "Complaint is not subject to dismissal for failure to allege a false or misleading statement." 1-ER-12.

#### 2. The Parties Engage in Extensive Fact and Expert Discovery

At the ensuing case management conference, the District Court ordered that discovery be bifurcated, as had been urged by Appellees. 3-ER-302. Specifically, the District Court directed the parties to address, in the first phase of discovery, "whether ionization smoke detectors detect smoldering fires." *Id.* The District Court correctly anticipated that Phase 1 would encompass whether ionization devices

detect smoldering fires as a "practical matter" in the "real world"—*i.e.,* whether they provide timely warning of smoldering fires. 3-ER-274-275 at 7:24-8:20. The District Court also correctly anticipated that Phase 1 would require expert testimony. 3-ER-275 at 8:1-12.

The parties then embarked on eighteen months of extensive fact and expert discovery focused exclusively on the Phase 1 question. 2-ER-108. That discovery encompassed the exchange of over 18,000 documents, dozens of third-party subpoenas, sixteen fact depositions, and six expert reports and depositions (3 per side). *Id.*

Appellants' experts included Dr. Vytenis Babrauskas, a leading fire science researcher formerly with NIST and member of the UL 217 technical committee, and Dr. B. Don Russell, a Regents Professor of Electric Engineering at Texas A&M University. 2-ER-117, 119. Dr. Babrauskas opined that:

- Smoldering fires are a common and dangerous type of home fire. They can and do produce large volumes of irritant and toxic smoke that ionization devices are technologically ill-suited to detect. 2-ER-111-112.

- Based on the findings of multiple studies by independent researchers, including NIST (in the most comprehensive and authoritative testing conducted to date), ionization devices fail to detect smoldering fires in time to allow safe escape. 2-ER-112-119.

- Testing by UL—a private entity heavily influenced by Appellees and other industry participants—did not measure ionization device performance in smoldering fires involving common household combustible materials; rather, UL 217's testing protocol, developed in the late 1970s, involved a

single material with a smoke profile unrepresentative of materials commonly found in homes. 2-ER-117-119, 128-130.

Dr. Russell conducted extensive testing of ionization devices in his capacity as director of the Smoke Detector Test Facility of the Texas Engineering Experiment Station, an agency of the State of Texas. 2-ER-119. Based on that testing, and his decades of research and investigation, Dr. Russell opined that

- Ionization devices fail to detect smoldering fires in time to allow safe escape. 2-ER-120.
- UL 217 testing does not simulate device performance under full-scale and real-world fire conditions. 2-ER-119-120.

**3. The District Court Grants Summary Judgment to Appellees Without Addressing the Phase 1 Question**

Following the close of discovery, Appellees filed a Joint Motion for Summary Judgment. 2-ER-135. Their motion largely ignored the extensive fact discovery that occurred over the previous eighteen months and *completely ignored* the extensive expert discovery undertaken by the parties. Rather than address the Phase 1 question of "whether ionization smoke detectors detect smoldering fires," as a "practical matter" in the "real world," 3-ER-302; 3-ER-274-275 at 7:24-8:12, Appellees' summary judgment motion instead raised a variety of arguments as to why Appellants' CLRA claim supposedly failed as a matter of law. 2-ER-135.[4]

[4] Appellees presumably adopted this strategy because they understood that the expert opinions and testimony of Appellants' distinguished fire-safety experts alone created a genuine issue of material fact as to whether ionization devices detect

At the very end of their brief, Appellees advanced the argument—which was beyond the scope of Phase 1, and which Appellees had not raised in their motion to dismiss[5]—that California's safe-harbor doctrine precludes Appellants' claims. 2-ER-161.

In opposing summary judgment, Appellants focused on the Phase 1 question—as the District Court had directed at the Case Management Conference, 3-ER-284, 287-288, 296—detailing the abundant fact and expert evidence establishing that ionization smoke detectors do not detect smoke from smoldering fires in real-world residential fires as a practical matter. 2-ER-101. At the very least, Appellants contended, a genuine issue of material fact existed on that Phase 1 question, thus precluding a grant of summary judgment. 2-ER-131.

Because it was outside of the Phase 1 question, and Appellees had not previously raised it, Appellants addressed the safe harbor argument at the very end

---

smoldering fires as a "practical matter" in the "real world." 3-ER-274-275 at 7:24-8:12.

[5] At oral argument, Appellee First Alert's counsel conceded that Appellees included the safe harbor argument in their motion for summary judgment despite its being beyond the Phase 1 question, 2-ER-34-38 at 18:16-22:14, and also that it depended on factual material, 2-ER-38, 40 at 22:17-18; 24:16-20, specifically, an approval process and category descriptions in listings issued by the State Fire Marshal.

of their 25-page opposition brief.[6] 2-ER-130-131. Appellants argued that, under *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 541 (Cal. 1999), the safe harbor doctrine applies only where a specific provision of law expressly permits the conduct or actually bars the claim. 2-ER-130. Appellants explained that, because no statute or regulation specifically addresses the conduct challenged here—falsely and misleadingly labeling and marketing ionization devices as "Smoke Alarms"—there is no safe harbor. *Id.* Appellants further argued that the California State Fire Marshal's listings do not create a safe harbor because its exercise of regulatory authority did not include consideration or review of the veracity or accuracy of labeling and marketing ionization devices as "Smoke Alarms." 2-ER-130-131.

The District Court heard oral argument on Appellees' summary judgment motion on March 13, 2026. 2-ER-100. Despite having ordered that Phase 1 would be limited to the factual question of "whether ionization smoke detectors detect smoldering fires," 3-ER-302—and despite the comparatively minimal emphasis

---

[6] In advance of their opposition deadline, Appellants sought leave to file an opposition brief longer than the 25-page limit imposed by Local Civil Rule 7.4(b). The District Court denied the motion. 2-ER-133.

given to it by the parties in their briefing, which the District Court noted[7]—the District Court focused oral argument on whether California's safe harbor doctrine barred Appellants' CLRA claim, 2-ER-17-64.

At oral argument, counsel for Appellants reiterated that, in *Cel-Tech,* the California Supreme Court established a narrow safe harbor defense as a state law analog to federal preemption. 2-ER-26. Pursuant to *Cel-Tech* and its progeny, for the safe harbor doctrine to apply, there must be specific legislation or regulation *expressly* permitting the conduct challenged under the CLRA, *i.e.,* the advertising, labeling, and packaging of ionization devices as "Smoke Alarms." *Id.* Appellants' counsel emphasized that the challenged conduct in this case is not the *sale* of ionization devices, but their advertising and marketing as "Smoke Alarms," when in fact they do not warn of smoldering fires, the most deadly type of house fire, in time to allow safe escape. 2-ER-27.

Appellants' counsel detailed *first*, that no legislation or regulation expressly permits ionization devices to be advertised, labeled, or packaged as "Smoke Alarms." No legislation addresses that conduct, much less charges the Fire Marshal with authority to review and determine whether the advertising and labeling of fire safety devices is true and accurate. No California regulations establish criteria for a

[7] *See* 2-ER-34 at 18:16-18 ("The Court: …The plaintiff says the reason the defendants didn't give this more time is it's a throw-away argument. At least that's an assumption the reader can make looking at it.").

decision by the Fire Marshal to approve advertisements or labels as true and accurate. Therefore, there is no safe harbor from liability for the conduct challenged here. 2-ER-29, 32-33, 42-44, 92, 95, 97.

Appellants' counsel emphasized, *second*, that no safe harbor exists here because the Fire Marshal's approvals and listings of do not constitute the type of government authorization that, under *Cel-Tech,* would foreclose judicial determination of whether a particular practice is unfair or deceptive under the CLRA. The Fire Marshal's listings are not the product of a formal, deliberative process akin to notice-and-comment rulemaking and, thus cannot—and do not—-have a preemptive force of law equivalent to legislation or regulation. 2-ER-29, 33, 48-53, 92-94, 97-98.

Approximately three weeks after oral argument, the District Court issued its Order Granting Defendants' Motion for Summary Judgment. 1-ER-3. The Order relied entirely on the safe harbor doctrine—indeed, that was the only issue the Court analyzed and discussed. *Id.* The Order does not even mention, let alone discuss, the Phase 1 question that the Court had ordered the parties to focus on first, pursuant to the Court's bifurcation of the case two years earlier, 3-ER-302.

In its Order, the District Court relied on California Health and Safety Code ("HSC") § 13114 and the regulations promulgated thereunder by the Fire Marshal as a regulatory scheme pursuant to which Appellees' ionization devices ostensibly

were approved for sale. 1-ER-6-9. The District Court concluded that the Fire Marshal's approval and listing of the devices for sale under a product category described as "Smoke Alarm-Ionization Type" provided a safe harbor from challenge under the CLRA. 1-ER-9.

This timely appeal followed. 3-ER-354.

### D. California Health Safety Code § 13114 and the Underlying Regulatory Framework

Given the District Court's reliance on it in granting summary judgment, an overview of HSC § 13114 and its underlying regulatory framework is provided below.

#### 1. HSC § 13114

The California legislature delegated authority to the Fire Marshal to "adopt regulations and standards … necessary to control the *quality and installation* of fire alarm systems and fire alarm devices marketed, distributed, offered for sale, or sold in this state." HSC § 13114(a) (emphasis added). No statute expressly permits the conduct challenged here—falsely or misleadingly advertising, labeling, and packaging ionization devices as "Smoke Alarms"—or precludes a consumer protection claim based on that conduct. HSC § 13114(b)(1) prohibits a person from "market[ing], distribut[ing], offer[ing] for sale, or sell[ing] any fire alarm system or fire alarm device in this state unless . . . approved and listed by the State Fire Marshal." *Id.* at § 13114(b)(1). HSC § 13114 *does not* delegate regulatory authority

to the Fire Marshal to control *how* devices are advertised or marketed or to review or determine the accuracy or veracity of representations therein.

**2. The Underlying Regulatory Framework**

The regulations promulgated pursuant to HSC § 13114 set minimum quality and installation requirements for devices to be sold in California. *See* 19 C.C.R. § 741 ("These regulations are intended to provide the criteria with respect to the quality or and the method or manner of installation, for approval and listing of household fire alarm systems and household fire alarm devices of a type intended for use in household occupancies…"). They require, among other things, that: (a) devices be approved and listed by the Fire Marshal before being marketed or sold, *see* 19 C.C.R. §§ 743-744; and (b) the construction details and electrical features, the tests for performance and electrical manufacturing and production, and the marking of equipment designed for use in a household fire warning system conform with the provisions of the NFPA 72 National Fire Alarm Code,[8] *see id. at* § 756.

[8] The "marking" provisions of the NFPA 72 National Fire Alarm Code do not address representations or product descriptors used in the advertising, labeling, or packaging of devices. Rather, they require certain information to be marked on the unit itself, including manufacturer information, a listing mark, the unit's electrical rating, published operating and maintenance instructions, test instructions, replacement and service instructions, an explanation of signal indicators and the distinction between alarm and trouble signals, the unit's sensitivity setting, a reference to an installation diagram and owner's manual, and the date of manufacture. 2-ER-191.

No California regulation expressly permits or requires an ionization device to be advertised, labeled, or packaged as a "Smoke Alarm." No regulation states that listed ionization devices have been determined to perform effectively (*i.e.,* to notify occupants in time to allow safe escape) in smoldering fires. No regulation requires the use of ionization technology in a fire safety product. No regulation defines the representation "Smoke Alarm" for use in the advertising, labeling, or packaging of fire detection devices. No regulation provides that the Fire Marshal reviews the advertisements, labels, or packaging of listed devices for accuracy or veracity or that a product may not be listed if the label contains a false or misleading statement. No regulation precludes Appellees from accurately advertising, labeling, and packaging their ionization devices (including by advising consumers that those devices are not suitable to protect against smoldering fires).

Pursuant to the regulations, to apply for approval to be sold in California, a manufacturer must complete an Application for Listing Service and submit a test report issued by an approved testing organization and technical data comprising copies of engineering drawings, specification sheets, installation instructions, and the operations and maintenance manual, *see* 19 C.C.R. §§ 206, 209, 213, 214. Listed products are those for which a person has submitted an Application for Listing Service and appropriate test reports and technical data, allowing them to be sold in California. The listing can be renewed annually upon submission of a renewal

application and fee, *see* 19 C.C.R. § 206(b). Listed devices must bear the Fire Marshal's listing label, which is a logo of the Fire Marshal, *see id.* at § 212. There is no evidence in the record that the Fire Marshal reviewed or approved the veracity or accuracy of the labeling or packaging at issue here or determined that the listed devices would notify occupants of all common types of home fires in time to permit safe escape.

## SUMMARY OF ARGUMENT

The District Court's grant of summary judgment and dismissal of the UCL and FAL claims should be reversed and the case remanded for further proceedings for two reasons.

***First***, the District Court erred in granting summary judgment on the ground that California's safe harbor doctrine bars Appellants' CLRA claim (Count III). The CLRA broadly prohibits 29 different "unfair or deceptive acts or practices…undertaken by any person in a transaction intended to result or that results in the sale…of goods…to any consumer," including falsely or misleadingly representing that goods have characteristics, uses, or benefits that they do not have or are of a particular standard, quality, grade, style or model. Cal. Civ. Code § 1770. Appellants allege that Appellees' advertising, labeling, and packaging of their ionization devices as "Smoke Alarms" is unfair and deceptive because that conduct

leads reasonable consumers to believe the products warn of all common types of home fires in time to allow safe escape when in fact they do not.

California's safe harbor doctrine protects conduct that a specific provision of law *expressly* declares lawful, thereby limiting the judiciary's power to hold that specific conduct unfair under the CLRA. *See Cel-Tech*, 973 P.2d at 541. There is no provision of law expressly declaring the advertising, labeling, and packaging of ionization devices as "Smoke Alarms" lawful. The District Court erred in relying on HSC § 13114 and the regulations promulgated thereunder because they do not declare the specific conduct challenged here lawful. That regulatory scheme does not address or grant authority to the Fire Marshall to decide *how* devices are advertised or marketed or to determine the accuracy or veracity of representations made in the advertisements, labels, or packaging of ionization devices, much less unequivocally permit advertising, labeling, and packaging ionization devices as "Smoke Alarms."

The District Court also erred in relying on the Fire Marshal's listings—which allow the devices to be sold but do not address how they are advertised and marketed—as providing safe harbor for the conduct challenged here. Those listings do not have the force of law necessary to preclude or limit the judiciary's power to hold the conduct challenged here unfair under the CLRA. Moreover, there is no evidence that, in listing the devices for sale, the Fire Marshal considered and

determined that the challenged conduct in these circumstances—misrepresenting that ionization devices are "Smoke Alarms" in their advertising, labeling, and packaging—was fair and accurate as a matter of law.

***Second***, the District Court erred in dismissing Appellants' claims under California's Unfair Competition Law (Count I) and False Advertising Law (Count II) on the grounds that Appellants lacked standing to seek injunctive relief under those statutes. That was error because, in consumer fraud cases, plaintiffs satisfy the imminent injury requirement by showing they will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although they would like to. *See Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956 (9th Cir. 2018). Appellants satisfied this requirement by alleging they would like to purchase smoke alarms in the future but are unable to rely on the validity or accuracy of Appellees' product representations.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed on appeal *de novo*. *See Kohler v. Bed Bath & Beyond of California, LLC*, 778 F.3d 827, 829 (9th Cir. 2015); *Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008). In conducting that review, the evidence is viewed in the light most favorable to the nonmovant and all reasonable inferences are drawn in that party's favor. *See Hittle v. City of Stockton, California*, 101 F.4th 1000, 1011 (9th Cir. 2024). A district court's interpretations of

California's consumer protection laws, the California Health and Safety Code, and regulations implemented thereunder, as interpretations of law, are reviewed *de novo*. *Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643, 646 (9th Cir. 2000) ("We review the district court's interpretation of state law, including state statutes, de novo") (citation omitted). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

This Court reviews *de novo* a district court's dismissal for lack of standing. *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021).

## <u>ARGUMENT</u>

### I. THE DISTRICT COURT ERRED IN CONCLUDING THAT THE CALIFORNIA SAFE HARBOR DOCTRINE BARS APPELLANTS' CLAIMS

The District Court concluded that HSC § 13114(a) and the regulations promulgated thereunder constitute a "safe harbor" such that Appellees' use of the "Smoke Alarm" descriptor on their ionization devices cannot be challenged as false or misleading under the CLRA. 1-ER-9. The District Court erred because no statute or regulation *expressly* permits the challenged conduct of advertising, labeling, or packaging ionization devices as "Smoke Alarms" or forecloses Appellants' claim that such advertisements, labels, or packaging are false and misleading under the CLRA. To reach its conclusion, the District Court improperly relied on device

listings issued by the Fire Marshal to manufacturers, *id.,* which do not have the force of law and do not direct or approve any particular marketing claims or representations, and thus cannot provide a safe harbor.

Under well-settled California law, to create a safe harbor, legislation or regulation must "actually bar an action or clearly permit the [challenged] conduct." *Cel-Tech,* 973 P.2d at 541. It is not enough that a statute or regulation fails to prohibit such conduct. *Id.* According to the District Court, although no statute or regulation addresses the conduct challenged here—the veracity or accuracy of advertising, labeling, and packaging of ionization devices as "Smoke Alarms"—it is enough that the Fire Marshal sometimes refers to the devices using the same descriptor used by applicants for listing and that Appellees prominently display on their packaging. This was error because (i) the conduct challenged is not within the scope of the purported harbor-granting statute, HSC § 13114, or the regulations promulgated thereunder; (ii) no specific legislation or regulation bars Appellants' claims or affirmatively permits Appellees' challenged conduct; and (iii) the Fire Marshal's listings constitute informal agency action that lack the force of law under *Cel-Tech*, and, in any event, neither bar Appellants' claim nor expressly permit Appellees' conduct.

### A. The Safe Harbor Doctrine Carves Out a Narrow Exception for Specific Conduct from the Judiciary's Broad Power to Declare Conduct Unfair or Deceptive

The safe harbor doctrine is a narrow exception to a court's power under the CLRA to declare conduct unfair or deceptive. The Supreme Court of California fashioned a "safe harbor" from unfair competition claims by applying legislative preemption principles:

> Although the unfair competition law's scope is sweeping, it is not unlimited. . . . Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor.

*Cel-Tech,* 973 P.2d at 541. Under this limited restriction on the judiciary's authority, "[t]o forestall an action . . . another provision must actually 'bar' the action or clearly permit the conduct." *Id.*[9]

The ambit of the safe harbor is narrow because, in enacting unfair competition and consumer protection laws, the California legislature recognized that it could not anticipate all possible forms in which unfair or deceptive practices may occur. *See, e.g., id.* at 542. The legislature therefore used broad language, covering a wide range of business activities, which in the CLRA is to be "liberally construed … to protect

[9] *Cel-Tech* applied the safe harbor doctrine to unfair competition claims under California's Unfair Competition Law. The doctrine also applies to CLRA claims. *See, e.g., Ebner v. Fresh, Inc.,* 838 F.3d 958, 963-64 (9th Cir. 2012); *Bourgi v. West Covina Motors, Inc.,* 83 Cal. Rptr. 3d 758, 769 (Cal. Ct. App. 2008).

consumers against unfair and deceptive practices," Cal. Civ. Code §§ 1760 & 1770. From this purposefully expansive power granted to the judiciary to determine what is unfair or deceptive, the safe harbor doctrine carves out a narrow, defined exception for specific conduct that has been *expressly* declared lawful. *See Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1167 (9th Cir. 2012) ("[T]o fall under a safe harbor, the [challenged conduct] must be expressly permitted by some other provision.").

Thus, while courts cannot use the CLRA to override the legislature's determination that "*certain* activity in *certain* circumstances," *i.e.,* the specific conduct in the challenged context, is lawful, "if the Legislature did not consider *that activity in those circumstances*, the failure to proscribe it in a specific provision does not prevent a judicial determination that it is unfair…." *Cel-Tech,* 973 P.2d at 542 (emphasis added). Under California law, courts have a responsibility to guard against the "myriad unanticipated ways in which unfair" and deceptive practices may occur in the sale of consumer goods, except in the precise circumstance of where a specific provision of law expressly declares the challenged conduct lawful by "actually bar[ring] an action or clearly permit[ting] the conduct." *Id.* at 541, 545 (internal quotation marks and citation omitted).

Statutes or implementing regulations[10] can shield specific conduct because they, in essence, preempt a consumer protection claim by having "deemed [the conduct] 'fair' as a matter of law." *Davis*, 691 F.3d at 1166. Crucially, however, mere informal agency action does not have the force of law under *Cel-Tech* and therefore cannot create a safe harbor that preempts the judiciary's power under the CLRA. *See De La Torre v. CashCall, Inc.,* 422 P.3d 1004, 1017-18 (Cal. 2018) (declining to find that administrative agency's interpretation of law in a complaint previously filed against defendant created safe harbor).

**1. HSC § 13114 Does Not Grant the Fire Marshal Regulatory Authority Over the Accuracy or Veracity of the Advertising or Marketing of Ionization Devices**

To rely on a safe harbor, Appellees' conduct must be "within the scope" of the harbor-granting statute. *Cel-Tech*, 973 P.2d at 541 (internal quotation marks and citation omitted). The District Court erred by finding a safe harbor under a statute, HSC § 13114, that does not cover the conduct at issue.

The "specific conduct" challenged here is Appellees' use of the false and misleading representation "Smoke Alarm" to advertise, label, and package

[10] *Cel-Tech* recognized that legislation may give rise to safe harbor, and the Ninth Circuit has extended that to implementing regulations. *See Cel-Tech,* 973 P.2d at 541; *Davis,* 691 F.3d at 1166 ("even if 'the Legislature's mere failure to prohibit an activity' does not create safe harbor… this does not preclude the possibility that one might arise where an implementing regulation clearly permits that activity") (quoting *Cel-Tech*, 973 P.2d at 542).

ionization devices when, in fact, those devices fail to protect against common and deadly smoldering fires. 2-ER-263 ¶ 118. The statute relied upon by the District Court—HSC § 13114– provides the Fire Marshal with authority to adopt regulations and standards "to control the *quality and installation* of fire alarm systems and fire alarm devices . . . ," HSC § 13114(a) (emphasis added), and prohibits the marketing and sale of such devices unless approved by the Fire Marshal, *see* HSC § 13114(b). It does not, however, give the Fire Marshal regulatory authority over *how* those devices are advertised or marketed; what representations may be accurately or fairly used; or whether a representation used on a label or packaging is truthful and accurate or false and misleading. Accordingly, the District Court's reliance on HSC § 13114, which prohibits the sale of devices unless listed and approved by the Fire Marshal, was misplaced because Appellants do not challenge Appellees' mere sale of the devices (provided that they are accurately advertised, labeled, and packaged in a way that does not mislead a reasonable consumer to believe, among other things, that an ionization device is sufficient to warn against common and deadly smoldering fires).

Where, as here, a statute does not apply to the conduct at issue there can be no safe harbor. *See, e.g., Doe v. SuccessfulMatch.com,* 70 F. Supp. 3d 1066, 1080 (N.D. Cal. 2014) (no safe harbor where the allegedly harbor-granting statute required posting of the company's privacy policy on its website, with which defendant

complied, but plaintiffs' claim was that the website impermissibly made their information viewable on other websites); *Torres v. JC Penney Corp., Inc.,* No. 12–cv–01105 JST, 2013 WL 1915681, at *2–4 (N.D. Cal. May 8, 2013) (no safe harbor where statutes imposed purity requirements for gold and silver items, but plaintiffs claimed that the items contained undisclosed rhodium).

Because HSC § 13114 neither provides the Fire Marshal with regulatory authority over the veracity or accuracy of advertisements or marketing of devices, nor precludes a court from finding the advertising or marketing of devices unfair or deceptive, neither the statute nor the regulations promulgated thereunder can possibly provide a safe harbor for the conduct challenged here: Appellees' false and misleading advertising, labeling, and packaging of ionization devices as "Smoke Alarms."

### 2. No Legislation or Regulation Actually Bars a Claim or Clearly Permits the Specific Conduct Challenged Here

Beyond failing to provide the Fire Marshal with authority to regulate the accuracy or veracity of how devices are advertised or marketed, neither HSC § 13114 nor any regulation clearly deems the conduct challenged here—the representation "Smoke Alarm" in the advertising, labeling, or packaging of an ionization device—fair, accurate, or non-misleading as a matter of law. No provision of California law affirmatively permits that representation on the label or packaging of an ionization device and no provision expressly forecloses an action

based on that conduct. California law therefore does not limit or preempt the judiciary's power to declare that conduct deceptive or misleading to a reasonable consumer pursuant to the CLRA. *See Cel-Tech,* 973 P.2d at 541; *see also Ebner,* 838 F.3d at 963 ("To fall within the safe harbor, the challenged conduct must be *affirmatively permitted* by statute—the doctrine does not immunize from liability conduct that is merely not unlawful.") (emphasis added).

Aimed at the "quality and installation"—and not the veracity of the advertising or marketing—of various types of fire safety devices, the regulations promulgated pursuant to HSC § 13114 provide that for products to be approved for listing, manufacturers must submit a test report issued by an approved testing organization and copies of technical data, including engineering drawings, specification sheets, installation instructions, and the operations and maintenance manual. *See* 19 C.C.R. §§ 209, 213, 214.

None of the regulations authorize use of the representation "Smoke Alarm" in the advertising, labeling, and packaging of any fire safety device, including ionization devices. And, nothing in the regulations immunizes the use of the "Smoke Alarm" representation from challenge under the CLRA. The regulations do not define the term "Smoke Alarm" or its use in connection with ionization devices; they do not require the use of ionization technology; they do not state that ionization devices provide notice in time to escape smoldering fires or that the Fire Marshal's

listing means they do; and they do not state that no other technology is needed to protect against smoldering fires. No regulation prevents Appellees from accurately informing consumers that ionization devices are unsuitable to protect them against common and deadly smoldering fires. Additionally, there is no evidence that the regulations address reasonable consumer understanding of the representation "Smoke Alarm" as applied to ionization devices or permit a third party to challenge the Fire Marshal's listing of a product. To the extent the regulations incorporate performance standards, they set minimum basic requirements to allow the devices to be offered for sale and sold, but Appellants do not contend in this case that the mere offering of ionization devices for sale violates the CLRA.

The most that can be said is that the regulations do not make Appellees' use of the "Smoke Alarm" descriptor unlawful. But the safe harbor "rule does not prohibit an action . . . merely because some other statute on the subject does not, itself, provide for the action or prohibit the challenged conduct . . . . There is a difference between (1) not making an activity unlawful, and (2) making that activity lawful." *Cel-Tech,* 973 P.2d at 541; *see also De La Torre,* 5 Cal.5th at 987 (ruling that absence of rate cap on loans of at least $2,500, where there was a rate cap on loans under $2,500, did not render all rates lawful). Because no statute or regulation "actually bar[s] the action or clearly permits the conduct" here, that conduct can

form the basis of a CLRA claim and is not shielded by the safe harbor doctrine. *Cel-Tech,* 973 P.2d at 541 (internal quotation marks omitted).

This Court has carefully adhered to the strict boundaries of the safe harbor doctrine to carve out narrow exceptions for specific conduct expressly deemed lawful by legislation or implementing regulation. In *Davis*, this Court found that the Truth in Lending Act ("TILA") and Regulation Z "clearly permit[ted], and indeed require[d] with equal force, the disclosure of any annual fee in an application for a credit card," with which Appellees complied, thereby bringing that conduct within a safe harbor. 691 F.3d at 1165. But the Appellees' credit card *advertisements*, which did not disclose the annual fee, did not fall within the ambit of that safe harbor because no statute or regulation expressly permitted the omission of an annual fee; it was not enough that TILA and Regulation Z failed to prohibit the omission. *See id.* at 1165-67.

Likewise, in *Ebner*, this Court found that a claim challenging a label's accurate net weight statement was barred by the safe harbor doctrine because federal and state law required a net weight statement, but that a claim challenging the omission of a supplemental statement as to how much of the product was actually accessible was not barred by the safe harbor doctrine because "there is no law expressly permitting the omission of supplemental statements." 838 F.3d at 964.

In circumstances similar to those here (but presenting a stronger case for safe harbor), the court in *McKay v. Sazerac Co., Inc.* also rigorously demarcated the narrow confines of the safe harbor doctrine, rejecting it because the regulations did not "clearly permit the type of representations made by [the defendant]. And neither [regulation] directly conflict[ed] with [the plaintiff's] claims." No. 23-cv-00522, 2023 WL 3549515, at *4 (N.D. Cal. May 17, 2023). The plaintiff there claimed that the defendant's Fireball Malt label was deceptively similar to its Fireball Whisky label. *See id.* at *5. The defendant argued that the use of its Fireball Malt label was protected from CLRA and other claims by the safe harbor doctrine, because the Alcohol and Tobacco Tax and Trade Bureau ("TTB") had exclusive jurisdiction over regulating alcoholic beverage labels and had granted the defendant a Certificate of Label Approval ("COLA") for its label. *See id.* at *3, *4. The defendant relied on two TTB regulations, which stated that a COLA could not be issued if (a) the label contained any statement, irrespective of falsity, that was misleading to consumers as to the age, origin, identity, or other characteristics of the malt beverage, or (b) any label statement created a misleading impression directly or indirectly. *See id.* at *4. The court found that even though the Fireball Malt label satisfied some of the requirements of the TTB regulations, those regulations did not "clearly" permit any and all labels that were ambiguous and substantially similar to other products. *Id.* The court reasoned that the plaintiff's claims were predicated on a comparative

analysis of two products, but there was no evidence that the TTB regulations addressed a comparative analysis with other labels, tested for consumer confusion, or that TTB procedures permitted a third party to challenge the label's approval. *See id*. The fact that the TTB issued a COLA did not create a safe harbor as the challenged aspects of the label were not actually barred or clearly permitted by TTB regulations or TTB's issuance of a COLA. *See id.*

Similarly here, the challenged aspect of Appellees' labels and packaging—the use of the term "Smoke Alarm" in connection with a device that does not warn in time to allow escape from common and dangerous smoldering fires—is not clearly permitted by the Fire Marshal's regulations. Nor does any regulation directly conflict with Appellants' claim that advertising, labeling, and packaging an ionization device as a "Smoke Alarm" is false and misleading to a reasonable consumer. There is no regulation defining the term "Smoke Alarm" for use on the label or packaging of an ionization device; addressing the veracity or accuracy of that representation in that context; or testing consumer understanding. Nor is there any evidence that the Fire Marshal considered the veracity or accuracy of that representation; specifically determined whether ionization devices perform as "smoke alarms" in smoldering fires, *i.e.,* sound in time to allow safe escape; or investigated consumer understanding when approving the devices for listing. Thus, there is no safe harbor here where the challenged aspects of Appellees' conduct are

not actually barred or clearly permitted by the Fire Marshal's regulations or its listings.

Because there is no statute or regulation declaring that advertising, labeling, and packaging an ionization device as a "Smoke Alarm" is true, accurate, and not misleading as a matter of law, this case stands in sharp contrast to cases finding a safe harbor based on statutes or regulations that clearly permit, indeed even mandate, the specific conduct that the plaintiffs sought to challenge. *See, e.g., Alvarez v. Chevron Corp.,* 656 F.3d 925, 933-35 (9th Cir. 2011) (concluding that safe harbor doctrine applied to purchasers' UCL and CLRA claims where the challenged business practice—the *design* of Appellees' gasoline dispensers—was unequivocally permitted, even mandated, by the governing state regulatory scheme which prescribed the *design* of the dispensers, and federal regulation expressly preempted the addition of corrective disclosures under state law) (emphasis added); *Dinan v. SanDisk LLC*, 844 F. App'x 978, 979-80 (9th Cir. 2021) (finding safe harbor for claims challenging decimal prefix definitions of "giga" and "G" used in commerce where statute clearly permitted use in commerce of metric system as defined by NIST and NIST defined metric prefix "giga" and "G" as corresponding to the decimal definition of gigabyte); *see also Bourgi,* 83 Cal. Rptr. 3d at 764-66 (ruling that legislature established a clearly demarcated line between "new" and "used" vehicles—permitting minor repaired damage to new vehicles and specifying

the circumstances under which disclosure of damage is mandated—affording a safe harbor for vehicle dealers complying with the damage disclosure law).

Unlike those cases, nothing in HSC § 13114 or the regulations promulgated thereunder affirmatively permits, much less requires, manufacturers to advertise, label, or package their ionization devices as "Smoke Alarms." No provision of law conflicts with a claim based on that conduct. Because nothing in California law expressly permits use of the "Smoke Alarm" product descriptor to advertise, label, or package an ionization device or precludes a court from adjudicating that conduct as false and misleading under the CLRA, the District Court's order granting summary judgment based on the safe harbor doctrine should be reversed.

#### 3. The Fire Marshal's Listings Do Not Carry the Force of Law or Approve How the Devices Are Advertised, Labeled, or Packaged

While no statute or regulation bars Appellants' claim or permits Appellees' conduct, the District Court relied on the Fire Marshal's listings of Appellees' ionization devices as providing safe harbor. 1-ER-9. This was error because: (a) the listings do not carry the force of law under *Cel-Tech*, *i.e.,* they are not the type of government authorization sufficient to foreclose judicial determination of whether a particular practice is unfair or deceptive under the CLRA; and (b) the Fire Marshal's listings do not clearly permit the challenged conduct or actually bar Appellants' claim.

### a. *Informal Agency Action Cannot Create a Preemptive Safe Harbor*

The Fire Marshal appears to categorize listed products by number and brief description, for example "3774 - Electric Locks" and "4480 - Waste Material Containers." 2-ER-193-200. Appellees' devices appear to have been listed at some point in time under the category "7256 – Smoke Alarm-Ionization Type (Single/Multiple)."[11] 2-ER-202, 204, 206-207, 209, 211, 214-215. Those categories, and in particular the descriptions or definitions of the categories, 2-ER-197, are not set forth or defined in any legislation or regulation, nor are they incorporated in any legislation or regulation. The listings of the devices issued to Appellees, 2-ER-202, 204, 206-207, 209, 211, 214-215, also are not legislation or regulation nor incorporated into legislation or regulation. The District Court therefore erred in relying on the listings, and in particular their reference to a category description, as immunizing the conduct challenged here, because such listings and category descriptions do not have the force of law required by *Cel-Tech*

[11] Most of the listings relied on by the District Court do not appear to have been in effect on the dates the devices were sold to Appellants. For example, *compare* 3-ER-341 ¶ 90 (alleging Kidde Model i12010SCO was purchased on Aug. 27, 2019; other Kidde Models were purchased on June 5, 2020, and Sept. 13, 2021) *with* 2-ER-206-207 (listing for Kidde Model i12010SCO issued on April 27, 2023) and 2-ER-202 (listing for Kidde Models i12040A, i12060A and i12080A expired on June 30, 2015); *compare* 3-ER-343 ¶ 94 (alleging Kidde Model i9070 was purchased Feb. 2, 2023) *with* 2-ER-209 (listing for Kidde Models i9070, i9030, i9040/i9040RV, i9050, and i9080 expired on June 30, 2009); 3-ER-343 ¶ 96 (alleging First Alert Model SC9120B was purchased since Nov. 8, 2019) *with* 2-ER-214-215 (listing for Model SC9120B issued on April 28, 2023).

and its progeny. The District Court did not cite any authority for the proposition that such informal agency action can create a safe harbor.

In considering agency action as a source of safe harbor, lower courts have analogized the determination of whether such action is to be accorded the weight of law "for purposes of the application of the safe harbor rule…to that same determination for purposes of preemption." *Von Koenig v. Snapple Beverage Corp.,* 713 F. Supp. 2d 1066, 1076 (E.D. Cal. 2010); *see also Hofmann v. Fifth Generation, Inc.,* No. 14-cv-2569, 2015 WL 7430801, *4 (S.D. Cal. Nov. 20, 2015) (applying formality requirement from federal preemption doctrine to safe harbor analysis).

That inquiry—into whether agency action has the force of law—is focused predominantly on the process by which the agency arrived at its decision. *See United States v. Mead Corp.,* 533 U.S. 218, 230 (2001) ("It is fair to assume generally that Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement of such force."); *Reid v. Johnson & Johnson,* 780 F.3d 952, 964-66 (9th Cir. 2015) (declining to afford preemptive effect foreclosing public protections under state false advertising law to federal agency action in the form of FDA letter providing enforcement guidance, because the letter did not indicate that the FDA intended to foreclose state law challenges and

the letter did not invoke FDA's statutory authority to approve claims immediately, pending notice and comment).

For example, in *Mead,* the Supreme Court ruled that an agency's classification rulings did not have the force of law where there was no indication in the statute that the legislature meant to delegate authority to the agency to issue classification rulings with the force of law; the agency did not generally engage in notice-and-comment before issuing classification rulings; the rulings were not binding on third parties; and the rulings were issued in such large quantities that they could not possibly have each enjoyed the attention and procedure characteristic of formal rulemaking. *See* 533 U.S. at 231-34.

Likewise here, for numerous reasons, there is no support for a claim that the Fire Marshal's category descriptions or listings were the result of a formal, deliberative process akin to formal notice-and-comment rulemaking, an adjudicative enforcement action, or other procedure tending to foster fairness and deliberation. *First*, there is no indication in HSC § 13114 that the legislature meant to delegate authority to the Fire Marshal to describe listing categories with the force of law. *Second*, there is no support for any claim that the Fire Marshal engaged in notice-and-comment before issuing listings or identifying listing categories. *Third,* there is no evidence that the listings or category descriptions are binding on third parties or that the Fire Marshal's listing process had a procedure for challenge by third parties.

*Fourth*, given the nature of the listings and that they must be renewed on an annual basis, it is reasonable to conclude—and there is no evidence to suggest otherwise—that the Fire Marshal issues many listings each year and thus each such listing cannot possibly have enjoyed the attention and procedure characteristic of formal rulemaking. Indeed, the listings themselves expressly disclaim independent investigation by the Fire Marshal before approving the product for listing. 2-ER-202, 204, 207, 209, 211, 214. They explicitly state that they are based on data submitted by the applicant that the Fire Marshal has not independently verified, that the listing does not constitute an endorsement or recommendation of the device, and that the listing may not be used to verify correct operational requirements.[12] *Id.* Thus, as in *Mead*, the Fire Marshal's listings and category descriptions do not have the force of law such that they can preempt claims under the CLRA. *See Mead*, 533 U.S. at 231-34*; see also Kay v. Copper Cane, LLC*, 549 F. Supp. 3d 1014, 1022-23 (N.D. Cal. 2021) (no safe harbor where defendant did not prove process of obtaining COLA fostered the fairness and deliberation characteristic of procedures entitled to the force of law).

---

[12] The listings state: "OSFM Fire Engineering staff has reviewed the test results and/or other data but does not make an independent verification of any claims. This listing is not an endorsement or recommendation of the item listed. This listing should not be used to verify correct operational requirements or installation criteria." 2-ER-202, 2-ER-204, 2-ER-207, 2-ER-209, 2-ER-211, 2-ER-214.

Even where an agency has been delegated the authority to regulate, pre-approve, and prohibit false and misleading labels (unlike the Fire Marshal here), court after court has ruled that agency approvals of those labels do not have the force of law sufficient to invoke the safe harbor where the pre-approvals were not the product of a formal deliberative process. *See, e.g., McKay,* 2023 WL 3549515, at *5 (finding that COLAs issued by TTB were not entitled to the force of law because they were not the product of a formal deliberative process, which was "a second reason why [the] regulations do not provide a safe harbor from Plaintiff's CLRA, UCL, and FAL claims," the first reason being that the challenged conduct was not actually barred or clearly permitted by TTB regulations) (citation omitted); *Hofmann,* 2015 WL 5440330, at *7 (no safe harbor where TTB's actions related to its examination and approval of the term "Handmade" on label, including the COLA it issued, were insufficiently formal); *Von Koenig,* 713 F. Supp. 2d at 1076 (no safe harbor where FDA's policy regarding the use of the term "natural" was not "the result of a formal, deliberative process akin to notice and comment rulemaking or an adjudicative enforcement action" and thus could not "be accorded the weight of federal law").

*Cel–Tech* spoke only of exceptions to liability for conduct clearly permitted by "specific legislation." *See* 973 P.2d at 541. *Davis* extended the safe harbor to conduct specifically authorized by formal implementing regulation. *See* 691 F.3d at

1165-66. Where the legislative or executive branches of government have acted through such formal processes, preclusion of CLRA claims in the courts may be appropriate. But the District Court erred in expanding the source of a safe harbor beyond specific legislation or implementing regulation to *informal* agency action—in the form of listings and product category descriptions that do not have the force of law.

*b. The Listings Do Not Clearly Permit the Challenged Conduct*

In any event, the fact that the Fire Marshal has listed the ionization devices at issue here could not create a safe harbor because those informal agency actions were not directed at the specific conduct challenged here: Appellees' false and misleading advertising, labeling, and packaging ionization devices as "Smoke Alarms." The Fire Marshal's listing process serves a different purpose, focusing on minimum requirements for quality and installation necessary to allow sale of the products, not the veracity or accuracy of the representations made in the marketing of devices.

Consistent with the fact that the Fire Marshal has not been delegated regulatory authority over the veracity or accuracy of the advertising, labeling, and packaging of devices, as discussed above, (a) the Fire Marshal has not adopted regulations on the use of the term "Smoke Alarm" in the advertising of ionization devices or stating that the listing of an ionization device means that they will notify occupants in time to escape a smoldering fire; and (b) there is no evidence here that

the Fire Marshal reviewed, investigated, or approved the labels and packaging at issue or the "Smoke Alarm" representation on those labels or packaging. Given that the Fire Marshal has not provided any guidance on the use of the term "Smoke Alarm" in the marketing of ionization devices, and there is no evidence that it actually reviewed the labels and packaging or the representations challenged here, its listings cannot and do not clearly sanction the use of the "Smoke Alarm" representation in the advertising, labeling, and packaging of ionization devices. *See Cel-Tech*, 973 P.2d at 542 ("[I]f the Legislature did not consider *that activity in those circumstances*, the failure to proscribe it in a specific provision does not prevent a judicial determination that it is unfair . . . ") (emphasis added).

This case is similar to *People v. Johnson & Johnson,* where the California Court of Appeal ruled that the FDA's limited review, undertaken as part of its clearance process, did not create a safe harbor because the clearance process was focused on equivalence between devices, not safety, and therefore its clearance of defendant's pelvic mesh devices was not a finding that the device's labeling was complete, accurate, and not misleading. *See* 77 Cal. App. 5th 295, 347 (Cal. Ct. App. 2022). Even where an FDA advisory committee had considered whether special controls were needed for certain mesh products, such as improvements in physician and patient labeling, but did not order additional special controls, the FDA's inaction did not establish a safe harbor. *See id.* at 348. The court ruled that, at most, the FDA

had failed to declare the defendant's conduct unlawful. *See id.; see also Torres,* 2013 WL 1915681, at *3 (ruling that defendants failed to show FTC Guides had clearly permitted them to fail to disclose the rhodium coating at issue—at best, the provisions did not make defendants' failure to disclose the rhodium coating unlawful—and therefore did not shield those omissions under the safe harbor doctrine).

Because nothing in California law expressly permits use of the "Smoke Alarm" product descriptor in the advertising, labeling, or packaging of ionization devices, or prohibits manufacturers from accurately advertising, labeling, and packaging their ionization devices, the District Court's order granting summary judgment based on the safe harbor doctrine should be reversed.

## II. THE DISTRICT COURT ERRED IN DISMISSING COUNTS I AND II BECAUSE APPELLANTS HAVE ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF

The District Court held that Appellants lacked standing to seek injunctive relief under the UCL and FAL because they failed to allege that they wished to purchase ionization devices in the future and any such allegation would not be plausible now that Appellants know that ionization devices will not protect them from smoldering fires. 1-ER-14-15. That was error; Appellants did allege a cognizable threat of repeated injury in the future. Specifically, Appellants have

alleged a desire to purchase fully functional smoke alarms in the future but that they cannot rely on the validity of the representations on Appellees' devices.

### A. Article III Requires Only a Similar Injury, Not an Identical One

To support a claim for injunctive relief, a plaintiff need only allege "a sufficient likelihood that [she] will again be wronged in a *similar* way"—not in the identical way that gave rise to her damages claim. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (emphasis added).

Crucially, in assessing similarity, courts "must be careful not to employ too narrow or technical an approach," but must instead "examine the questions realistically" and "reject the temptation to parse too finely." *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005); *see also Davidson*, 889 F.3d at 967 (applying *Armstrong*'s admonition to a false-labeling injunctive-relief claim).

This Court's opinion in *Davidson* controls here. *See* 889 F.3d at 966-72 (ruling that, because plaintiff's allegations sufficiently identified impending risk of her being subjected to defendant's allegedly false advertising, she had standing to pursue injunctive relief). The plaintiff alleged that Kimberly-Clark's wipes were falsely labeled "flushable" and sought injunctive relief under the UCL, FAL, and CLRA barring further use of that label. *Id.* at 961–62. The district court dismissed her injunctive relief claims for lack of Article III standing, reasoning that since she

now knew the labels were false, she faced no future injury. *Id.* at 963, 966. This Court reversed, holding that a previously deceived consumer can still have standing to seek an injunction because she faces a real threat of future harm. *Id.* at 969–71.

This Court described Davidson's injury as "her inability to rely on the validity of the information advertised on Kimberly-Clark's wipes despite her desire to purchase truly flushable wipes"—an "informational injury." *Id.* at 971 (citing *Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1258 (9th Cir. 2010)). Even despite now knowing that the "flushable" labeling was false at the time of her purchase, the Court held that Davidson faced the similar injury of being unable to rely on Kimberly-Clark's representations of its product in deciding whether she should purchase the product in the future. *Davidson*, 889 F.3d at 971–72. Thus, the Court determined that an injunction prohibiting Kimberly-Clark from using the term "flushable" on their wipes until the product is truly flushable would likely redress Davidson's injury by requiring Kimberly-Clark to make only truthful representations on their wipe products upon which Davidson could reasonably rely. *Id.* at 972.

**B. Appellants Adequately Alleged a Similar Injury**

Although the District Court here cited *Davidson*, it ignored this Court's reasoning and instead faulted Appellants for not alleging they would again purchase

the exact product already proven defective. 1-ER-14 ("Plaintiffs do not, however, allege they wish to purchase ionization-only devices in the future."). This was error.

As *Davidson* explains, a consumer who buys a product in reliance on a label buys it because she wants what the label promises. When the label later proves false, the consumer's injury is not that her underlying want has changed—it is that she can no longer tell, from that same manufacturer's labeling, whether a future purchase will satisfy the want that never went away. That inability to rely on the label going forward is itself "actual and imminent, not conjectural or hypothetical" injury. *See Davidson*, 889 F.3d at 969 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Therefore, absent an injunction, Appellants have no way of knowing whether Appellees' ongoing use of the unqualified "Smoke Alarm" descriptor has been corrected to reflect the capabilities of the labeled product.

Under *Davidson*, Appellants alleged a cognizable injury. They alleged their interest in owning smoke alarms that will adequately protect themselves and their families from all common types of house fires. 3-ER-306 ¶ 10; 341-344 ¶¶ 90, 91, 95, 97. They specifically alleged their desire and intent to purchase residential smoke alarms in the future. 3-ER-348 ¶ 114 ("Plaintiffs and the Class members seek to avoid such harm *in the future when purchasing home smoke alarms*" (emphasis added)). They alleged that Appellees are two of the largest manufacturers of smoke alarms in America, 3-ER-304 ¶ 3, so they are likely to encounter Appellees' devices

again when purchasing a smoke alarm. They further alleged they are unable to rely on the validity or accuracy of Appellees' product representations in the future. 3-ER-348 ¶ 114. And, lastly, they alleged they have no adequate remedy at law to prevent this type of future harm. *Id.* ¶ 116.

Together, these allegations state an actual and imminent threat of future harm sufficient to establish standing to seek injunctive relief—the same injury this Court found sufficient in *Davidson*. This Court should reverse the dismissal of Counts I and II.

## CONCLUSION

The District Court's grant of summary judgment to Appellees and dismissal of Counts I and II should be reversed, and the case remanded for further proceedings.

Respectfully submitted,

AEGIS LAW GROUP LLP

By: */s/Michael K. Ross*
Michael K. Ross
Alison Van Horn
801 Pennsylvania Ave., N.W., Suite 740
Washington, D.C. 20004
Tel: (202) 737-3373
Fax: (202) 735-5071
mross@aegislawgroup.com
avanhorn@aegislawgroup.com

Dated: July 27, 2026

*Attorneys for Appellants*

## STATEMENT OF RELATED CASES

There are no related cases pending in this Court.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** No. 26-2994

I am the attorney or self-represented party.

**This brief contains** 10,455 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- [x] complies with the word limit of Cir. R. 32-1.
- [ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- [ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 2(c)(2), or Cir. R. 29-2(c)(3).
- [ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- [ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties
  - [ ] a party or parties are filing a single brief in response to multiple briefs
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- [ ] complies with the length limit designated by court order dated ______.
- [ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Michael K. Ross **Date** July 27, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July 2026, I caused a copy of the foregoing document to be filed with the Clerk of the Court of the U.S. Court of Appeals for the Ninth Circuit via the Court's Electronic Filing System, and to be served electronically on all counsel of record through that system.

*/s/Michael K. Ross*
Michael K. Ross